IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **CORNELIUS MCGINNIS** | ) | Case No. 04-10373-TOM-7 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| **DON ARMSTRONG, in his capacity** | ) | |
| as Property Tax Commissioner of | ) | |
| Shelby County, Alabama, | ) | |
| | ) | |
| Plaintiff, | ) | A.P. No. 11-00194-TOM |
| vs. | ) | |
| | ) | |
| **CORNELIUS MCGINNIS,** | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

This matter is before the Court on Don Armstrong's ("Plaintiff") Motion For Partial Summary Judgment ("Motion") and Cornelius McGinnis' ("Defendant") Response To Motion For Partial Summary Judgment ("Response"). The Court held a hearing on Plaintiff's Motion and Defendant's Response on July 11, 2011. Appearing at this hearing were William Dennis Schilling, counsel for the Plaintiff, and Michael Antonio, counsel for the Defendant. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) (1994) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a

---

[1]The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A) and (J).[2] This Court has considered the pleadings, arguments of counsel, and the law and finds and concludes as follows.[3]

**FINDINGS OF FACT**[4]

Debtor secured a loan from Decision One Mortgage Company, LLC ("Decision One") for the purpose of purchasing residential real property in Shelby County, Alabama on August 14, 2003. The "COMPLIANCE AGREEMENT" ("Agreement") between Defendant and Decision One, which is dated August 14, 2003, provides that the "undersigned" - Defendant - "agree[s] to pay all property taxes" and "accepts responsibility to: (1) Notify real estate taxing authority (e.g. City Treasurer, Township Treasurer, County Treasurer) to send all property tax bills to

---

Also, pursuant to the Eleventh Circuit's decision in *Fidelity & Deposit Co. v. Morris (In re Morris)*, 950 F.2d 1531, 1535 (11th Cir. 1992), the Court may retain jurisdiction over this adversary proceeding even though the underlying bankruptcy case was dismissed on December 23, 2009 (Proceeding No. 189 and Proceeding No. 190). Ameriquest filed a Motion for Judgement on the Pleadings as to the Adversary Proceeding Due to Dismissal of Main Bankruptcy Case (A.P. No. 173) on February 10, 2010 based on this Court's dismissal of the underlying bankruptcy case.

[2]28 U.S.C. §157(b)(2)(A) and (J) provide as follows:

(b)(2)Core proceedings include, but are not limited to–
(A) matters concerning the administration of the estate;

. . .

(J) objections to discharges[.]

[3]This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[4]Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

2

undersigned for payment." Motion, Ex. C. Pursuant to this Agreement, the warranty deed conveyed to Defendant and his wife, Teresa McGinnis, from Tanglewood Corporation directed the Shelby County Tax Commissioner to "[s]end Tax Notice to: 1701 Shelby Forest Place Chelsea, Alabama 35043 "—the address of the home purchased by Defendant. Motion, Ex. B, p. 1.

Defendant filed this chapter 13 bankruptcy petition on November 23, 2004 and converted the case to a chapter 7 on February 14, 2011.[5] As of the filing of this case, the real estate taxes on Defendant's Shelby Forest property were due and owing. Defendant did not, however, list any debt due for real estate taxes owing on the Shelby Forest Property in the schedules filed with this petition or in the amended schedules he filed on January 6, 2005. Defendant's amended chapter 13 plan, which provided a 100% payment to unsecured claimants, was confirmed by the Court on February 9, 2005. In March of 2005, Defendant received a certified letter from Annette D. Skinner, acting Shelby County Property Tax Commissioner, which noted that Defendant was delinquent in paying the 2004 real estate taxes related to his Shelby Forest home in the amount of $699.01, including fees, costs and interests. Motion, Ex. D., p. 2. This letter also noted that Defendant was to appear before the Probate Court of Shelby County, Alabama on April 4, 2005 to show cause why "A DECREE FOR THE SALE OF PROPERTY ASSESSED FOR TAXATION AS BELONGING TO YOU, SHOULD NOT BE MADE FOR THE PAYMENT OF THE TAXES THEREON AND FEES, COST AND INTEREST." *Id.* Defendant testified in his deposition that he received this letter but did not appear before the Probate Court as

---

[5]Defendant previously filed a chapter 13 case - Case No. 92-01450 - in 1992 and a discharge was entered March 4, 1997. Motion, Ex. A, p. 53, lines 12-14.

3

requested. Motion., Ex. A, pp. 102-08. He further testified that he did not call the Tax Commissioner or the Probate Court to alert them to the fact that he had a pending bankruptcy case. Defendant testified that he took this path of inaction because he did not have enough money to pay the taxes. Defendant also testified that he did not contact his mortgage company, the Trustee or this Court to provide notification of the unpaid taxes or the potential sale of his home for taxes by the Tax Commissioner.

On May 11, 2005, Defendant's Shelby Forest property was sold for 2004 real estate taxes, and the price included a $43,000.00 "overbid."[6] Defendant testified that he visited the Tax Commissioner's office two to three times subsequent to this sale to determine the amount necessary to pay the real estate taxes on the Shelby Forest property in full. During these visits, Defendant discovered that he could collect the $43,000.00 overbid from the Tax Commissioner by signing certain documents. Without mentioning his pending bankruptcy to anyone in the Tax Commissioner's office or notifying the Trustee or this Court of the availability of these proceeds and his potential receipt of these proceeds, Defendant and his wife signed these documents and received the $43,000.00 overbid. During his deposition, Defendant testified that he knew he had to get Court approval before entering into certain transactions due to his previous chapter 13 bankruptcy experience. Motion, Ex. A., p 33. He further testified that he "[p]robably should have" contacted this Court prior to signing these documents and receiving the $43,000.00 overbid. Motion, Ex. A, p. 121-22.

Defendant subsequently deposited the $43,000.00 overbid proceeds in his Legacy Credit

---

[6] The concept of an "overbid" is explained in the Alabama Supreme Court's recent decision in *First Union Nat'l Bank of Florida v. Lee County Comm'n*, No. 1090804, 2011 WL 2573370, at *1-*4 (Ala. June 30, 2011).

4

Union account on November 14, 2008, which raised the balance of this account to $43,027.40. By September 30, 2009, the balance of this account had dwindled down to $5.26. The account statements for this account reflect that $22,000.00 of the $43,000.00 overbid proceeds were withdrawn from this account on February 20, 2009. When asked about this transaction during his deposition, Defendant testified that the $22,000.00 was withdrawn for the purpose of making a down payment on a mobile home that was going to be put in Defendant's wife's name since he was in the middle of a pending bankruptcy case. The Court notes that Defendant has not provided the Court with any evidence, apart from a non-negotiated cashier's check in the amount of $22,000.00 made payable to Crown Housing, which indicates that this transaction actually occurred. It is unclear what happened with this transaction but the Defendant maintains the money is gone. When asked how the remaining balance of the overbid proceeds - $21,000.00 - were spent, Defendant testified that he and his wife used those proceeds to pay for car repairs and various bills; however, he has no records to support these statements. Defendant further testified that he did not report his receipt of the $43,000.00 in overbid proceeds to his accountant. Consequently, Defendant did not pay taxes on these proceeds.

The Defendant and his wife are still living in the home that was sold for the taxes to a third party, and the third party purchaser filed a motion for relief from stay to obtain possession of the property. Since then, substantial litigation has been ongoing between numerous parties. It appears to this Court that the Defendant's conduct and transactions have been revealed only as a result of this litigation.

## **CONCLUSIONS OF LAW**
5

Case 04-10373-TOM7    Doc 273    Filed 07/22/11    Entered 07/22/11 15:53:10    Desc Main
Document    Page 5 of 11

Rule 56 of the Federal Rules of Civil Procedure[7] provides that

> [a] party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is not a genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a summary judgment motion should be granted, the Court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "'[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment.'" *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). Once the moving party has satisfied its burden of proof by proving the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law, the burden shifts to the non-moving party to offer evidence of specific facts which prove the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.s. 574, 586-87 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993).

Plaintiff asserts that Defendant's discharge is due to be denied pursuant to 11 U.S.C. §§ 727(a)(2)-(4).[8] Section 727(a)(2)(B) provides that

---

[7]Rule 56 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

[8]As will be discussed *infra*, Defendant's discharge is due to be denied pursuant to 11 U.S.C. § 727(a)(2). Thus, the Court need not address whether Defendant's discharge is due to be denied pursuant to 11 U.S.C. §§ 727(a)(3)-(4).

6

> [t]he court shall grant the debtor a discharge, unless - . . . . (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed - . . . . (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(B). Plaintiff has the burden of proving those facts which are necessary to support a claim under 11 U.S.C. § 727(a)(2)(B) by a preponderance of the evidence. *See Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1339 (11th Cir. 2008)(citing *Grogan v. Garner*, 498 U.S. 279, 289-91 (1991)). He must also show that there is no genuine issue of material fact. Should Plaintiff carry his burden of proof, Defendant must provide evidence of a genuine issue of material fact to survive Plaintiff's motion for partial summary judgment.

In order to establish a prima facie case under Section 727(a)(2)(B), Plaintiff must prove the following elements: 1) a concealment; 2) after the filing date of the petition; 3) of property of the estate; 4) by the debtor with the intent at the time of the concealment to hinder, delay or defraud his creditors. *See Colonial Bank v. Johnson (In re Johnson)*, 301 B.R. 590, 596 (Bankr. N.D. Ala. 2003)(citing *Royer v. Smith (In re Smith)*, 278 B.R. 253, 257 (Bankr. M.D. Ga. 2001)).

The uncontroverted evidence offered by Plaintiff shows that Defendant concealed his receipt of the $43,000.00 overbid proceeds by depositing them into his Legacy Credit Union account and subsequently spending all of these proceeds without disclosing the existence of these funds to the Trustee, his creditors or the Court until some point in time after the proceeds had been spent. Defendant's concealment of these funds is further evidenced by the fact that he did not list the overbid proceeds as income on his federal income tax returns. It is evident to this Court that these transactions have been revealed only because of the ongoing and various

7

litigation. The second element of a prima facie case under Section 727(a)(2)(B) is satisfied because Defendant testified that he received these proceeds subsequent to the filing of his chapter 13 petition.

With respect to the third element, Plaintiff asserts that the overbid proceeds, which were received by Defendant post-petition and post-confirmation, are property of the estate. In *Waldron v. Brown (In re Waldron)*, the Eleventh Circuit Court of Appeals explained that

> [w]hile the case is pending, the post-petition property . . . [is] added to the estate until confirmation, the event that triggers [section] 1327(b) and "vests" the property of the estate in the debtor. That is, the property interests comprising the pre-confirmation estate property are transferred to the debtor at confirmation, and this "vesting is free and clear of the claims or interests of creditors provided for by the plan, [section] 1327(b), (c). Finally, the property of the estate once again accumulates property by operation of [section] 1306(a) until the case is "closed, dismissed, or converted."

536 F.3d 1239, 1243 (11th Cir. 2008) (quoting *City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 962 (N.D. Ill. 1997)). Thus,"[n]ew assets that a debtor acquires unexpectedly after confirmation" are property of the estate. *In re Waldron*, 536 F.3d at1243. Defendant received the overbid proceeds, which came into existence post-confirmation, subsequent to the confirmation of his chapter 13 plan. Therefore, these proceeds are property of the estate.

To satisfy the fourth element, movant must prove actual intent at the time of the concealment to hinder, delay or defraud his creditors, actual intent is required to satisfy this element; constructive fraud is not enough. *See Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 306 (11th Cir. 1994). However, "[Defendant's] actual fraudulent intent can be proven by circumstantial evidence because the debtor is unlikely to admit fraudulent intent." *In re Johnson*,

8

301 B.R. at 597 (citing *Village of San Jose v. McWilliams (In re McWilliams)*, 284 F.3d 785, 790 (7th Cir. 2002); *Henkel v. Green (In re Green)*, 268 B.R. 628, 647 (Bankr. M.D. Fla. 2001)).

      Defendant testified that he did not notify anyone in the Tax Commissioner's office of his pending bankruptcy case prior to, or at the time of, Defendant's receipt of the overbid proceeds from the Tax Commissioner's office. Defendant also testified that he did not disclose his receipt of these overbid proceeds to the Trustee or the Court until at some point in time after they had been spent despite knowing from a previous bankruptcy experience that certain transactions require Court approval prior to being concluded. In hindsight, Defendant testified in his deposition that he "probably should have" disclosed the existence of the $43,000.00 in overbid proceeds to the Trustee and the Court before signing documents to receive these proceeds. Defendant additionally testified that he did not disclose his receipt of the overbid proceeds to his accountant during the process of filing one of his federal income tax returns. Consequently, Defendant failed to pay taxes on this income. Defendant also testified that he and his wife spent $22,000.00 of the $43,000.00 overbid proceeds on a mobile home that they were going to put in Defendant's wife's name, not Defendant's name, because he had a pending bankruptcy case. However, no evidence was offered which corroborates Defendant's assertion that he and his wife spent $22,000.00 on the mobile home, apart from a non-negotiated cashier's check, the Court notes that if Defendant's testimony is accurate, then it is clear that Defendant intended to conceal the existence of this asset by placing it in his wife's name. Further, the only way these transactions became known is because of the litigation commenced so the purchaser of the Defendant's home could gain possession of the property.

      The Court finds that Defendant's deposition testimony combined with the evidence of

9

Defendant's and/or his family's spending of all of the overbid proceeds clearly shows that Defendant had actual intent to hinder his creditors by concealing his receipt of the overbid proceeds from them, the Trustee and this Court.

In response to Plaintiff's Section 727(a)(2)(B) arguments, Defendant asserts that he did not have any intention of defrauding or hindering his creditors as evidenced by the fact that his chapter 13 plan proposed to pay all of his creditors in full. The Court recognizes that Defendant's confirmed chapter 13 plan proposed to pay his listed creditors in full. However, the Court notes that Defendant's confirmed chapter 13 plan did not extinguish Defendant's continuing duty to disclose property of the estate. *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282 (11th Cir. 2002)(noting that "a debtor must amend his financial statements if circumstances change"). Furthermore, the uncontroverted evidence in this case shows that Defendant knew he should have disclosed the overbid proceeds to the Court but instead concealed these assets from the Court, the Trustee and his creditors so that he and his family could spend the proceeds as they deemed appropriate. Additionally, though Defendant argues he intended to pay all creditors 100%, he failed to list or provide notice to the real property taxing authority of the existence of the $43,000.00 overbid proceeds so they could get paid for the outstanding property taxes. The Court thus finds that this argument does not create a genuine issue of material fact.

Defendant also argues that Plaintiff's Section 727(a)(2)(B) argument fails because the overbid proceeds are not property of the estate. The Court has already concluded that the overbid proceeds were property of the estate; therefore, this argument fails. The Court finds that the Plaintiff has met his burden of proof and that his Motion For Partial Summary Judgment is due to be granted.

10

## CONCLUSION

Having concluded that Plaintiff has established a prima facie case under Section 727(a)(2)(B) and that there exists no genuine issue of material fact as to any of the elements of Plaintiff's prima facie case, the Court finds that Plaintiff's Motion is due to be granted.

Accordingly, it is hereby **ORDERED, ADJUDGED AND DECREED** that Plaintiff's Motion is **GRANTED**, and a separate Order and Judgment will be entered contemporaneously herewith.

Dated this the 22nd day of July, 2011.

/s/ Tamara O. Mitchell
United States Bankruptcy Judge

TOM: rdt

xc: Andre M. Toffel, Chapter 7 Trustee
    Michael J. Antonio, attorney for Cornelius Earl McGinnis
    William Dennis Schilling, attorney for Don Armstrong

11

Case 04-10373-TOM7    Doc 273    Filed 07/22/11    Entered 07/22/11 15:53:10    Desc Main
Document    Page 11 of 11